

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MIGUEL BURGOS,

                            Petitioner,

                                                    **OPINION & ORDER**
                                                    **CV-06-1025**

        -against-


SUPERINTENDENT T. POOLE,

                            Respondent.
---------------------------------------------------------- X
FEUERSTEIN, J.

        On February 23, 2001, a judgment of conviction was entered against petitioner Miguel

Burgos (petitioner) in the Supreme Court of the State of New York, Queens County (Eng, J.),

upon a jury verdict finding him guilty of four (4) counts of robbery in the second degree (N.Y.

Penal Law § 160.10) and one (1) count of criminal possession of stolen property in the third

degree (N.Y. Penal Law § 165.50), and imposition of sentence. On March 7, 2006, petitioner

filed a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

        For the reasons set forth herein, the petition is denied and the proceeding is dismissed.


I.      BACKGROUND

        A.      Factual Background

        The following facts were taken from transcript of the Wade/Dunaway/Mapp hearing (H.)

and the sentencing minutes (S.):

                1.      Wade/Dunaway/Mapp Hearing

1

Petitioner moved to suppress identification testimony and physical evidence on the basis, *inter alia*, that the lineup identification of him was unduly suggestive. Before Judicial Hearing Officer (J.H.O.) Thomas Demakos, Police Officer James Surrusco and Detective Adam Heege testified at the hearing on the motion.

On May 24, 1999, at approximately 2:05 a.m., a robbery occurred in a parking lot in front of 29-14 Northern Boulevard, Queens, New York. (Surrusco: H. 16).

Petitioner and his co-defendant Pablo Valle (Valle) were arrested on May 24, 1999 between 3:15 a.m. and 3:25 a.m. while they were in a 1998 black Honda Civic, bearing license plate number Y521ZU, in the vicinity of 190th and 191st Street and St. Nicholas Avenue in Manhattan. (Surrusco: H. 5-6, 11-12, 19-24). Approximately one half hour prior to the arrest, a radio transmission had been sent out to police units to watch for a black Honda Civic bearing license plate number Y521ZU that had been observed near 160th Street and which was occupied by two (2) males, one dark-skinned and one light-skinned. (Surrusco: H. 7-8, 18-19).

Following the arrest, petitioner and Valle were transported to the 34th Precinct station. (Surrusco: H. 12-13, 24, 27). The complainant, Adam Weiner (Weiner), arrived at the station and told Officer Surrusco that at approximately 2:00 a.m., as he and his friends were entering his vehicle upon leaving a bar in Queens under the 59th Street Bridge, two (2) men armed with guns, one (1) light-skinned and one (1) dark-skinned, approached them and took their property, currency and vehicle. (Surrusco: H. 14-15, 26). The property taken included a ring and bracelet, with Weiner's nickname "Borne" on them; a religious pendant with a yellow metal chain; and some currency. (Surrusco: H. 14). Officer Surrusco testified that a bracelet with the word "Borne" on it was recovered from petitioner's right wrist and that Weiner identified the bracelet

2

as his own. (Surrusco: H. 14, 29). Officer Surrusco also testified that Weiner identified the

vehicle from which petitioner was arrested as his. (Surrusco: H. 15).

Detective Heege conducted a lineup at the 114th Precinct station on May 24, 1999 at

approximately 9:40 p.m, in which petitioner was the subject. (Heege: H. 4, 18). Three (3)

people--Weiner, Giovanni Rodriguez (Rodriguez) and Luis Ramos (Ramos)-- viewed the lineup.

(Heege: H. 5). None of the viewers had an opportunity to see petitioner or the "fillers" in the

lineup before it began. (Heege: H. 6).

Detective Heege testified that Weiner, Rodriguez and Ramos all identified number two

(2) in the lineup as the man who robbed them. (Heege: H. 7-10). According to Detective Heege,

petitioner chose to be number two (2) in the lineup. (Heege: H. 5, 31, 33). Detective Heege took

Poloroid photographs of the lineup. (Heege: H. 10-12).

Detective Heege testified that he procured the "fillers" for the lineup from the Borden

Avenue Shelter. (Heege: H. 21-24). According to Detective Heege, petitioner had a light

mustache and goatee on the date of the lineup, (Heege: H. 26), and all of the "fillers" had "a little

bit of hair around the parts of the, you know, mustache and around the chin area as [petitioner]

did." (Heege: H. 24). Detective Heege testified that "fillers" sometimes use "a little bit of

carbon" on their faces, presumably to place or enhance beards and mustaches, at the detective's

request. (Heege: H. 26-27).

By report and recommendation dated September 5, 2000, J.H.O. Demakos recommended,

*inter alia*, that petitioner's motion to suppress be denied. People v. Burgos, No. 2121/99 (N.Y.

Sup. Ct. Sept. 5, 2000) (report and recommendation). The J.H.O. found, *inter alia*, that "[t]he

People came forward with evidence sufficient to demonstrate the fairness of the lineup

procedure. Despite [petitioner's] speculations, there is no evidence whatsoever in the record that

the officers were intentionally directing the witnesses' attention to [petitioner] by use of the

carbon, or that the witnesses even detected such use * * *. Consequently, [petitioner] failed to

meet his burden of establishing that the lineup was unduly suggestive because of use of the

carbon * * *." Id. at p. 5 (citations omitted). The J.H.O. further found that "the fillers were

sufficiently similar to [petitioner] in appearance that he was not singled out for identification."

Id. at p. 6. By order dated September 5, 2000, Justice Sheri S. Roman confirmed the

recommendation of the J.H.O. that petitioner's motion to suppress be denied. People v. Burgos,

No. 2121/99 (N.Y. Sup. Ct. Sept. 5, 2000)(order denying motion to suppress).


### 2. Verdict and Sentence

Following a jury trial, the trial court accepted a partial verdict[1] finding petitioner guilty of

four (4) counts of robbery in the second degree and one (1) count of criminal possession of stolen

property in the third degree. (T. 704-710). Petitioner was sentenced to an aggregate determinate

term of imprisonment of thirty-three (33) years. (S. 19). On February 23, 2001, a judgment of

conviction was entered against petitioner in the Supreme Court, Queens County (Eng, J.).


### B. Procedural History

Petitioner appealed the judgment of conviction to the Supreme Court of the State of New

---

[1] The jury was unable to reach a unanimous verdict on the first three counts of the indictment, charging petitioner with robbery in the first degree, so the Court accepted a partial verdict on the remaining counts pursuant to N.Y. C.P.L. § 310.70. The Court granted the People's subsequent motion to dismiss the first degree robbery counts on which a unanimous verdict could not be reached. (S. 4).

York, Appellate Division, Second Judicial Department on the grounds, *inter alia*: (1) that the evidence was legally insufficient and the verdict was against the weight of the evidence; (2) that the imposition of consecutive sentences was excessive; and (3) that the lineup was unduly suggestive. On December 6, 2004, the Appellate Division, Second Department affirmed the judgment of conviction, finding, *inter alia*, that the evidence was legally sufficient, the verdict was not against the weight of the evidence, the sentence imposed was not excessive, and petitioner's remaining contentions were without merit. People v. Burgos, 13 A.D.3d 389 (2d Dept. 2004). On February 28, 2005, the Court of Appeals denied leave to appeal the order of the Appellate Division. People v. Burgos, 4 N.Y.3d 797, 795 N.Y.S.2d 172, 828 N.E.2d 88 (2005). Thus, petitioner's judgment of conviction became final on May 29, 2005, when his time expired to seek direct review by writ of certiorari to the United States Supreme Court. See Rule 13(1) of the Rules of the Supreme Court of the United States; 28 U.S.C. § 2101(d).

On or about March 7, 2006, petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that the lineup was unduly suggestive because "the faces of the fillers were marked with carbon so that they would appear to have facial hair," and the lineup was conducted while the subjects were seated, "making the faces the main focus of [the] line-up [sic]." (Petition, p. 6 "Ground One"). Respondent filed his return on July 14, 2006.

II.    DISCUSSION

A.    Standard of Review under AEDPA[2]

---

[2] There is no dispute that petitioner's claim has been fully exhausted in the state courts, as required by the AEDPA, and that the state court adjudicated his claim on the merits, and, thus, the AEDPA standard applies. See, e.g. Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir. 2004)

The Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254,

governs applications of incarcerated state court defendants seeking federal habeas corpus relief.

Pursuant to 28 U.S.C. § 2254(d), an application for a writ of habeas corpus that has met the

procedural prerequisites

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). "An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and

(2) reduces its disposition to judgment.'" Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (citing

Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)); see also Spears v. Greiner, 459 F.3d 200, 203

(2d Cir. 2006), cert. denied sub nom Spears v. Spitzer, 127 S.Ct. 951, 166 L.Ed.2d 725 (2007)

(accord).

Once claims have been adjudicated on the merits, "a federal habeas court may grant the writ

if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the Supreme] Court has on a set

of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146

L.Ed.2d 389 (2000); 28 U.S.C. 2254 (d)(1). Alternatively, a federal habeas court may "'grant the

---

(holding that it will be presumed that a claim was adjudicated on the merits where it was one of the remaining contentions that the Appellate Division stated was "without merit" and that, in such case, the habeas petition should be reviewed under the AEDPA standard rather than *de novo*); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) (holding that a disposition of a claim as being "without merit" constitutes an adjudication on the merits, thus triggering AEDPA deference).

writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citing Williams, 529 U.S. at 413, 120 S.Ct. 1495). Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411, 120 S.Ct. 1495; see also Wiggins, 539 U.S. at 520-521, 123 S.Ct. 2527 (holding that the state court's decision must have been more than incorrect or erroneous; its application must have been "objectively unreasonable"). Under the AEDPA, determination of the factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1).

### B.     Suggestiveness of Lineup

Clearly established federal law at the time that petitioner's conviction became final was that a defendant's right to due process included the right not to be subjected to suggestive pre-trial identification procedures that create a "very substantial likelihood of irreparable misidentification." Manson v. Brathwaite, 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); see also United States v. Douglas, 525 F.3d 225, 242 (2d Cir. 2008) (holding that a defendant's right to due process includes the right not to be the object of suggestive police identification procedures that make an identification unreliable); Sales v. Harris, 675 F.2d 532, 537 (2d Cir. 1982)( holding that the Due Process Clause of the Fourteenth Amendment requires the trial court to exclude evidence which is

so unreliable as to indicate "a very substantial likelihood of irreparable misidentification").

In order to determine the admissibility of a pre-trial identification procedure, the court must first ascertain whether the procedures employed were "unnecessarily suggestive" of the petitioner's guilt. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), overruled on other grounds by Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001). "If the [pretrial identification] procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility; * * * no further inquiry by the court is required, and '[t]he reliability of properly admitted eyewitness identification * * * is a matter for the jury.'" Raheem, 257 F.3d at 133 (citing Foster v. California, 394 U.S. 440, 442 n. 2, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969)). If the pretrial identification procedure was unnecessarily suggestive, the degree of suggestiveness must be balanced against factors indicating that the identification was independently reliable, including the following: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Manson, 432 U.S. at 114, 97 S.Ct. 2243. Unnecessary suggestiveness does not, in and of itself, violate due process. See Neil v. Biggers, 409 U.S. 199, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Rather, in determining the admissibility of identification testimony, "reliability is the linchpin." Manson, 432 U.S. at 114, 97 S.Ct. 2243. The determinative factor when the confrontation procedure was suggestive is whether under the "totality of circumstances" the identification was nevertheless reliable. Neil, 409 U.S. at 199, 93 S.Ct. 375. "In sum, the identification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability." Raheem, 257

8

F.3d at 133.

After conducting an evidentiary hearing, the J.H.O. found that the lineup was not suggestive and the trial court allowed the prosecutor to introduce testimony concerning both the pre-trial identification, (Weiner: T. 232-235; Ramos: T. 328-329), and the in-court identification, (Weiner: T. 216; Ramos: T. 317), of petitioner.

The photograph of the lineup, (Declaration of Frederick H. Wen [Wen Decl.], Ex. A), reveals no hint of suggestiveness. "A lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator previously given by the witness and the other lineup participants obviously do not." Raheem, 257 F.3d at 134. Here, all of the lineup participants were light-skinned, non-bespectacled males with short-cropped hair and light mustaches and goatees. During the Wade hearing, Heege testified that all of the fillers had some facial hair[3], (H. 24), and, contrary to petitioner's contention, it cannot be discerned from the photograph of the lineup which, if any, of the fillers' facial hair was enhanced by carbon. Moreover, contrary to petitioner's contention, the lineup participants were all seated to eliminate any height or weight differentials. Further, any age discrepancies were not so apparent as to single petitioner out. In other words, petitioner did not so obviously stand out from the "fillers" as to create a substantial likelihood of misidentification. Accordingly, the state court's determination that the lineup procedure was not suggestive is not contrary to, or an unreasonable application of, clearly established federal law. See, e.g. U.S. ex rel. Richards v. Bartlett, No. CV-92-2448, 1993 WL 372267, at * 5 (E.D.N.Y. Sept. 9, 1993) (finding that the state court's determination that the lineup identification was not unnecessarily suggestive

---

[3] On cross-examination at trial, Detective Heege testified that he did the best he could procuring "fillers" with similar facial hair to petitioner but that "two or three" of the "fillers" might have used carbon to enhance the appearance of facial hair growth. (Heege: T. 498-499).

was reasonable where the petitioner and all of the "fillers" were of similar height and age and the prosecutor used an eye-makeup pencil to darken or add facial hair to the "fillers" to make their appearance more similar to that of petitioner).

Given the lack of any suggestiveness in the lineup, the identification testimony was admissible at trial "'without further inquiry into the reliability of the pretrial identification[s]'" of petitioner. Douglas, 525 F.3d at 243 (quoting United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990)). Thus, the trial court's failure to inquire into the factors indicating the reliability of the lineup procedure was not contrary to, or an unreasonable application of, clearly established federal law.

III.     CONCLUSION

The petition for a writ of habeas corpus is denied in its entirety and the proceeding is dismissed. Since petitioner has failed to make a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; see also Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); Luciadore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000); Kellogg v. Strack, 269 F.3d 100, 102 (2d Cir. 2001). Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. See, 28 U.S.C. § 2253. The Clerk of the Court is directed to close this case.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: July 1⁄, 2008
         Central Islip, New York

10

Copies to:

Miguel Burgos, *pro se*
01-A-1394
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, New York 12051-0999

New York State Attorney General's Office
120 Broadway, 22nd Floor
New York, New York 10271
Attn:   Frederick Hongyee Wen, A.A.G.